IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JOHN ANDREW KISTER, #264274, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) CASE NO. 2:20-CV-606-ECM-SMD<br>) |
| PATRICE RICHIE JONES, | )<br>)<br>) |
| Defendant. | ) |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.   INTRODUCTION**

Plaintiff John Andrew Kister, an inmate proceeding *pro se*, filed this 42 U.S.C. § 1983 action alleging he received inadequate access to the law library while incarcerated in the Residential Treatment Unit at Bullock Correctional Facility. Doc. 1. He claims this inadequate access violated his Fourteenth Amendment rights of access to the courts and equal protection. *Id*. at 4. As relief, he seeks "[a] declaration that [his] right to access to a law library, and equal protection under the law, have been violated by the law library procedure at [Bullock]"; "[a]ccess to at least 10 hours per week in the [Bullock] law library for RTU prisoners"; and "payment of all costs and fees." *Id*. at 5.

Warden Patrice Richie Jones, the sole named defendant, filed an Answer (Doc. 15), Special Report (Doc. 14), and Supplemental Special Report (Doc. 17) with supporting evidentiary materials addressing Plaintiff's claims. The Court issued an Order directing Plaintiff to respond to Defendant's filings with affidavits or statements made under penalty

of perjury and other evidentiary materials. Doc. 18. Plaintiff then filed numerous responsive documents, including an Answer to Special Report (Doc. 19), a Brief in Support of Complaint (Doc. 20), a Declaration in Support of Complaint (Doc. 21), a Declaration of Evidence (Doc. 22), a Response to Answer of Defendant (Doc. 23), a Declaration of Further Evidence (Doc. 24), and a Response to Supplemental Special Report (Doc. 27). Defendant then filed a Second Supplemental Special Report (Doc. 40) with additional evidentiary materials, and Plaintiff filed another response (Doc. 41).

The Court previously notified the parties that, absent any objections:

> [T]he court may at any time [after expiration of the time for Plaintiff to file a response] and without further notice to the parties (1) treat the special report, as supplemented, and any supporting evidentiary materials as a motion to dismiss or motion for summary judgment[,] whichever is proper, and (2) after considering any response as allowed by this order, rule on the dispositive motion in accordance with the law.

Doc. 18 at 3 (emphasis omitted). No objections were filed. Thus, the undersigned will now construe Defendant's Special Report, as supplemented, as a motion for summary judgment and, for the reasons set forth below, RECOMMEND that judgment be GRANTED in favor of Defendant on all claims.

## II. SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, a reviewing court must grant a motion for "summary judgment if the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly

supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson*, 477 U.S. at 248). "An issue is 'material' if it might affect the outcome of the case under the governing law." *Id.*

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). The movant can meet this burden by presenting evidence showing there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Id.* at 322–23.

Once the movant has satisfied this burden, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. In doing so, and to avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The parties must support their assertions "that a fact cannot be or is genuinely disputed" by

"citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations[], admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)–(B).

If the nonmovant "fails to properly address another party's assertion of fact as required by Rule 56(c)," then the Court may "consider the fact undisputed for purposes of the motion" and "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2)–(3).

"In reviewing whether the nonmoving party has met its burden, the [C]ourt must stop short of weighing the evidence and making credibility determinations of the truth of the matter." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998–99 (11th Cir. 1992) (citation omitted). "Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 999 (citations and internal quotations omitted). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (citation omitted). Furthermore, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990); *see also Anderson*, 477 U.S. at 249–50 ("If the evidence [on

which the nonmoving party relies] is merely colorable, or is not significantly probative, summary judgment may be granted.") (internal citations omitted).

## III. RELEVANT FACTS[1]

The following facts derive from Plaintiff's verified Complaint (Doc. 1), the sworn or verified evidentiary materials proffered by Defendant (Docs. 14-1; 17-1 through 17-3; 40-1 through 40-10), and Plaintiff's verified declarations in response (Docs. 21, 22, 24). Although Plaintiff filed other responsive filings (Docs. 19, 20, 23, 27, 41), the Court cannot consider any allegations therein because they are neither sworn nor properly verified in accordance with 28 U.S.C. § 1746.[2]

The Complaint provides that, beginning on July 20, 2020, while housed in the Residential Treatment Unit at Bullock, Plaintiff was given limited access to the law library. Doc. 1 at 3–4. Specifically, it states that "RTU prisoners get 30 minutes to an hour of yard time per day"; "the law library is only available to RTU prisoners during . . . yard time"; "the law library does not open every time RTU prisoners are given yard time"; Plaintiff had access to the law library six times in 28 days for approximately 10 to 15 minutes each;

---

[1] The "facts" set forth herein are merely for purposes of resolving summary judgment and may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir.), *opinion modified on reh'g*, 30 F.3d 1347 (11th Cir. 1994) ("[W]hat we state as 'facts' … for purposes of reviewing the rulings on the summary judgment motion [] may not be the actual facts.").

[2] *See, e.g., Roy v. Ivy*, 53 F.4th 1338, 1347 (11th Cir. 2022) ("Unsworn statements may not be considered by a district court in evaluating a motion for summary judgment.") (citing *Carr v. Tatangelo*, 338 F.3d 1259, 1273 n. 26 (11th Cir. 2003)); *McCaskill v. Ray*, 279 F. App'x 913, 915 (11th Cir. 2008) (holding that district court should not have considered unsworn and unverified allegation in deciding summary judgment); *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1306 (5th Cir. 1988) (noting that omission of the phrase "under penalty of perjury" would "allow[] the affiant to circumvent the penalties for perjury in signing onto intentional falsehoods"); *Grupo Rayco C.A. v. Delta Air Lines, Inc.*, No. 1:20-CV-1952, 2021 WL 1351859, at *9 n. 3 (N.D. Ga. Mar. 16, 2021) ("By omitting the requisite language stating that the certification was made 'under penalty of perjury,' counsel has failed to substantially comply with [§ 1746].").

this limited access "affect[ed] [his] access to the courts"; and "the general population has much more available law library time than RTU prisoners." *Id*. at 4.

> In her sworn affidavit attached to the Special Report, Defendant avers:
>
> RTU inmates report to the yard each morning at 7:00 A.M., or once the morning count has cleared. Part of recreation and yard time consist of law library and gym activities. Each inmate has the option to participate in either activity during this time. These activities are conducted seven days per week to include weekends and holidays for one hour barring inclement weather [or] unforeseen security situations. RTU inmates law library call is held during the mornings due to scheduled participation in groups, one on one counseling sessions with the Mental Health Professionals, other mental health classes to name a few. All of which are conducted between the hours of 8:00 A.M. and 4:00 P.M.
>
> Between July 31, 2020 and October 1, 2020, [Plaintiff] reported to the law library a total of 13 days for one hour each day totaling 13 hours.[] The law library [is] open[] . . . 2 hours per day, 14 hours per week. Administrative Regulation 412, Institutional Law Library requires that the law library to be open a minimum of 20 hours per week. Bullock has a total of 1484 inmate[s]. The general population also reports to the law library during their yard call . . . . The Law Library is available to all inmates during their scheduled yard time due to operating under controlled movement protocols.

Docs. 14-1 at 1–2; 17-1 at 1–2. As noted by Defendant, Administrative Regulation 412 provides that "[t]he institutional law library shall be open a minimum of twenty (20) hours per week to provide access for inmates." Docs. 14-1 at 4; 17-2 at 3. Defendant further provides law library records indicating that Plaintiff utilized the law library on July 31, August 4, August 7, August 12, August 18, August 21, August 25, August 27, August 28, September 8, September 10, September 22, September 25, and October 1. Docs. 14-1 at 6–30; 17-2 at 5–29.

In response, Plaintiff provides that he had access to the law library, for approximately 15 minutes each visit, on or around the following dates:

6

- Week of July 27th – Once
- Week of August 3rd – Twice
- Week of August 10th – Once
- Week of August 17th – Twice
- Week of August 24th – Three [times]
- Week of August 31st – Zero [times]
- Week of September 7th – Once
- Week of September 14th – Zero [times]
- Week of September 21st – Once
- Week of September 28th – Twice

Doc. 21 at 1.[3] Plaintiff also proffers an inmate request slip he purportedly submitted to Defendant on July 28, 2020 seeking additional time in the law library, to which she responded, "Speak with a supervisor" (Doc. 22 at 2); an inmate request slip he purportedly submitted to the "Supervisor of Law Library" on August 6, 2020, which does not contain a response (*Id*. at 3); a Memorandum signed by Defendant and dated October 1, 2020, providing a schedule of law library hours[4] (Doc. 24-2); and a letter he purportedly sent to Defendant on February 17, 2021 regarding inadequate law library access, which does not contain a response (Doc. 24-1).

In her Second Supplemental Special Report, Defendant purports to clarify some scheduling matters. First, she reiterates that RTU inmates have access to the law library during yard time each morning, "seven days per week . . . barring inclement weather as well as any unforeseen security situations." Doc. 40-1 at 1. She then states:

---

[3] The parties' evidence is relatively consistent as to Plaintiff's law library visits from late July to early October. Defendant provides 14 dates on which Plaintiff visited the law library during that period, and Plaintiff provides 13 dates.

[4] The schedule provides that "Canteen/Snack Line/Law Library/Yard Call" will be open to Dorms C & K on Mondays, Dorms E & I on Tuesdays, Dorms D & J on Wednesdays, Dorms F & G on Thursdays, and "Squads, Mental Health, Infirmary, Restrictive Housing" on Fridays. Doc. 24-2. It further provides that "[t]he law library, gym and yard will also be open [on weekends]." *Id*.

7

> The memorandum dated October 1, 2020 clearly states that also on Fridays during the time that Squad inmates are afforded the opportunity to draw from the canteen, inmates housed in [RTU] are also afforded the opportunity to utilize the law library if they so desire to do so much like other days of the week. Considering that Bullock currently only has one squad[,] no other general population inmates are in the gym during this time utilizing the law library.

*Id*. at 2. She then states that the law library is open "14 hours per day, 98 hours per week" to accommodate all 1,484 inmates at Bullock. *Id*. Finally, she states that, from October 2020 through June 2021, Plaintiff reported to the law library approximately 55 times. *Id*. at 3.

## IV.   DISCUSSION

### a.   Plaintiff's requests for declaratory and injunctive relief are moot.

In addition to monetary relief, Plaintiff seeks "[a] declaration that [his] right to access to a law library, and equal protection under the law, have been violated by the law library procedure at [Bullock]" and "[a]ccess to at least 10 hours per week in the [Bullock] law library for RTU prisoners." Doc. 1 at 5. However, in June of 2021, Plaintiff was transferred from Bullock to another correctional facility. Doc. 33. In March of 2023, Plaintiff was transferred to Bibb Correctional Facility (Doc. 45), where he remains incarcerated.[5]

The general rule in the Eleventh Circuit "is that a transfer or a release of a prisoner from prison will moot that prisoner's claims for injunctive and declaratory relief." *Mann v. McNeil*, 360 F. App'x 31, 32 (11th Cir. 2010) (citation omitted); *see also Owens v.*

---

[5] *See* http://doc.state.al.us/inmatesearch (last visited on July 28, 2023).

*Centurion Med.*, 778 F. App'x 754, 758 (11th Cir. 2019) ("[A] prisoner's transfer or release from a correctional facility generally will moot his claims for injunctive relief in a § 1983 action.") (citing *Spears v. Thigpen*, 846 F.2d 1327, 1328 (11th Cir. 1988) (noting that, in this circumstance, there is no longer a "case or controversy once the inmate has been transferred") and *Wahl v. McIver*, 773 F.2d 1169, 1173 (11th Cir. 1985) ("Past exposure to illegal conduct does not constitute a present case or controversy involving injunctive relief if unaccompanied by any continuing, present adverse effects.")). "Nor will there be any case or controversy when the chance of a prisoner's return to the offending facility is too speculative." *Owens*, 778 F. App'x at 759 (citing *Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985) (holding that a prisoner's claim for injunctive relief was moot since he was no longer being held in the jail with the conditions he had challenged and the risk of being sent back to that jail, and suffering from the threatened injury, was too speculative)).

Because Plaintiff is no longer incarcerated in the Residential Treatment Unit at Bullock, there is no reasonable expectation that Defendant will continue to deprive him of adequate law library access, and any effects of that alleged deprivation have been completely and irrevocably eradicated. *See Owens*, 778 F. App'x at 759 (citing *Los Angeles Cnty. v. Davis*, 440 U.S. 625, 631 (1979)). Further, any possibility that Plaintiff will return to Bullock—let alone the Residential Treatment Unit at Bullock—is speculative at best. Thus, Plaintiff's transfer to another correctional facility since the filing of this action renders moot his requests for declaratory and injunctive relief regarding law library access at Bullock. *See Owens*, 778 F. App'x at 759; *Spears*, 846 F.2d at 1328.

>    **b.    Plaintiff has failed to establish a genuine dispute of material fact as to a Fourteenth Amendment access to the courts claim.**

The Fourteenth Amendment gives prisoners a right of access to the courts. *Hall v. Sec'y for Dep't of Corr.*, 304 F. App'x 848, 850 (11th Cir. 2008) (citing *Wilson v. Blankenship*, 163 F.3d 1284, 1290 (11th Cir. 1998)). "To bring an access to the courts claim, an inmate 'must show actual injury in the pursuit of specific types of nonfrivolous cases: direct or collateral attacks on sentences and challenges to conditions of confinement.'" *Juiffre v. Broward Sheriff's Off.*, 717 F. App'x 886, 888 (11th Cir. 2017) (quoting *Wilson*, 163 F.3d at 1290). The impairment of any other "litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id*. "In order to show actual injury, a plaintiff must show 'deterrence, such as a denial or dismissal of a direct appeal, habeas petition, or civil rights case that results from actions of prison officials.'" *Hall*, 304 F. App'x at 850 (quoting *Al–Amin v. Smith*, 511 F.3d 1317, 1332 (11th Cir. 2008)); *see also Lewis v. Casey*, 518 U.S. 343, 351 (1996) ("[A]n inmate cannot establish relevant actual injury simply by establishing that his prison's law library . . . is subpar in some theoretical sense. [] [T]he inmate . . . must go one step further and demonstrate that the alleged shortcomings in the library . . . hindered his efforts to pursue a legal claim.").

Plaintiff has failed to demonstrate an actual injury resulting from limited law library access. He has not alleged, nor provided any evidence to support, that he suffered a "deterrence, such as a denial or dismissal of a direct appeal, habeas petition, or civil rights case" resulting from inadequate time in the law library. *See id*. (quoting *Al-Amin*, 511 F.3d

10

at 1332). His vague allegation that his access to the courts has been "affect[ed]" because he needs more time to conduct legal research (*see* Doc. 1 at 4) is not sufficient. *See, e.g., Wheeler v. Polite*, No. 5:22-CV-403, 2023 WL 3765239, at *1 (M.D. Ga. June 1, 2023) ("Although Plaintiff claims to have faced significant difficulties conducting legal research, there is no indication that he has suffered any actual injury because of these difficulties.").

Because he has not presented an actual injury, he has failed to establish a genuine dispute of material fact as to his Fourteenth Amendment access to the courts claim. *See, e.g., Ferguson v. Warden, Everglades Re-Entry Ctr.*, 714 F. App'x 966 (11th Cir. 2018) (affirming dismissal of complaint that failed to allege actual injury); *Ivory v. Warden, Gov. of Ala.*, 600 F. App'x 670 (11th Cir. 2015) (affirming grant of summary judgment in favor of defendants where plaintiff presented no evidence of actual injury). Accordingly, Defendant is entitled to summary judgment on this claim.

    **c.**     **Plaintiff has failed to establish a genuine dispute of material fact as to a Fourteenth Amendment equal protection claim.**

To overcome summary judgment on an equal protection claim, a plaintiff must generally demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment; and (2) his discriminatory treatment was based on race, religion, national origin, or some other constitutionally protected basis. *Jones v. Ray*, 279 F.3d 944, 946–47 (11th Cir. 2001). Alternatively, a plaintiff may show a "class of one" equal protection claim by demonstrating that he was "intentionally treated differently from others who were 'similarly situated' and that there is no rational basis for the difference in treatment." *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1263–64 (11th Cir. 2010). To

be similarly situated, the comparators must be prima facie identical in all relevant respects. *Id*. (citations omitted).

Plaintiff fails to establish a traditional equal protection claim because he neither alleges nor provides any evidence that he suffered discriminatory treatment based on race, religion, national origin, or any other constitutionally protected basis. *See Jones*, 279 F.3d at 946–47. To the contrary, he alleges that he was treated differently because he was housed in the Residential Treatment Unit, which does not constitute a protected class.[6] Nor does he establish a "class of one" claim, as he has failed to demonstrate either of the required elements.

First, he has failed to show that he was similarly situated to the inmates in general population. The undisputed evidence demonstrates that Plaintiff was housed in the Mental Health Building at Bullock, while general population inmates are not; that Plaintiff had a Mental Health Code and received "extensive mental health treatment," while general population inmates did not; and that Plaintiff was on a particularized schedule that differed from general population inmates "due to scheduled participation in groups, one on one counseling sessions with the Mental Health Professionals[,] and other activities[.]" Docs. 17-1 at 1–2; 17-3 at 1; 40-1 at 1–2. Thus, the general population inmates are not prima facie identical to Plaintiff in all relevant respects. *See Grider*, 618 F.3d at 1264; *see also Parker v. Dunn*, No. 2:15-CV-340-MHT, 2018 WL 4189671, at *7–8 (M.D. Ala. Aug. 6,

---

[6] To the extent Plaintiff's allegations could be construed as asserting that mentally ill inmates are a suspect class, such assertion fails. *See Lussier v. Dugger*, 904 F.2d 661, 671 (11th Cir. 1990) (citing *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 445–46 (1985)).

2018) (holding that inmate in close custody was not similarly situated to inmates in general population); *Golston v. Hetzel*, No. 2:11-CV-946-MHT, 2015 WL 758474, at *18 (M.D. Ala. Feb. 23, 2015) ("[I]t is clear that inmates confined in segregation and those housed in general population are not similarly situated.").

Second, even if Plaintiff was similarly situated to the inmates in general population, he has failed to demonstrate that any difference in treatment lacked a rational basis. The undisputed evidence demonstrates that Plaintiff's "separation from the general population is necessary to promote the desired outcome" of his mental health treatment plan; that law library call for RTU inmates is scheduled around "scheduled participation in groups, one on one counseling sessions with the Mental Health Professionals[,] and other activities" such as mental health classes; and that Bullock operates under controlled movement protocols to manage all 1,484 inmates. Docs. 17-1 at 1–2; 17-3 at 1; 40-1 at 1–2. Based on the record evidence, the Court is satisfied that Plaintiff's separation and divergent schedule from the general population was rationally related to the legitimate government purpose of managing Plaintiff's mental health needs and maintaining order at the institution.[7] See *Leib v. Hillsborough Cnty. Pub. Transp. Comm'n*, 558 F.3d 1301, 1306 (11th Cir. 2009) (stating the requirements to establish a rational basis and noting that the rational basis standard is "easily met").

---

[7] The Court emphasizes that Plaintiff's placement in the Residential Treatment Unit, as opposed to general population, does not permit prison officials to deprive him of fundamental rights such as access to the courts. However, as explained above, Plaintiff has failed to demonstrate any deprivation in this case regardless of the amount of time Plaintiff received, or did not receive, in the law library.

Thus, because Plaintiff has failed to demonstrate that he was treated differently from similarly situated inmates or that any difference in treatment lacked a rational basis, he has failed to establish a genuine dispute of material fact as to an equal protection claim. Accordingly, Defendant is entitled to summary judgment on this claim.

## V.  CONCLUSION

Accordingly, based on the foregoing, the undersigned RECOMMENDS that:

1. Defendant's Special Report (Doc. 14), which the Court construes as a motion for summary judgment, be GRANTED;

2. Judgment be ENTERED in favor of Defendant; and

3. This case be DISMISSED with prejudice.

It is further ORDERED that, by **August 28, 2023**, the parties may file objections to this Recommendation. The parties must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made. Frivolous, conclusive, or general objections will not be considered. The parties are advised that this Recommendation is not a final order and, therefore, is not appealable.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with 28 U.S.C. § 636(b)(1) will bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waive the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except on grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11th Cir. R. 3-1. *See Stein v. Reynolds Sec.,*

14

*Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard, Ala.*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

DONE this 14th day of August, 2023.

/s/ Stephen M. Doyle
STEPHEN M. DOYLE
CHIEF UNITED STATES MAGISTRATE JUDGE